UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

HARRY DUNN, et al.,

*Plaintiffs,*

v.

THOMAS AUSTIN, in his official capacity
as Architect of the Capitol, et al,

*Defendants*.

Civil Action No. 25-1844 (DLF)

**MOTION TO DISMISS OR IN THE ALTERNATIVE FOR SUMMARY JUDGMENT
AND SUPPORTING MEMORANDUM**

Defendants the Architect of the Capitol and Thomas Austin, in his official capacity as Architect of the Capitol (the "Architect"), by and through undersigned counsel, respectfully move to dismiss the Complaint in this action or, alternatively, for summary judgment.

Plaintiffs are two current or former law enforcement officers who allegedly responded to the incident at the Capitol on January 6, 2021. They allege a violation of the Equal Protection Clause of the Fifth Amendment for the alleged failure of the Architect of the Capitol to comply with the provisions of Public Law 117-103 (March 15, 2022) (the "Act"), providing for the obtainment and placement on the western front of the Capitol of an honorific plaque for the law enforcement officers who responded to the events at the Capitol on January 6, 2021. Compl. (ECF No. 4-1) at 12. The Complaint also seeks relief in the nature of mandamus under 28 U.S.C. § 1361 to compel action by the Architect. *Id*. at 13.

As discussed below, the Complaint should be dismissed for several reasons. First, Plaintiffs lack standing to challenge the Architect's alleged non-compliance with the Act. The alleged harms they identify in the Complaint consist of "psychic injuries . . . compounded by the

government's refusal to recognize their service," accusations by unidentified third parties that Plaintiffs were "'crisis'" actors or "left-wing conspiracy agents," and the receipt of death threats from unidentified third parties.  Compl. (ECF No. 4-1) ¶¶ 31-32.  These alleged intangible harms are not sufficiently concrete to constitute an injury-in-fact.  Further, because these harms either allegedly arose from the events of January 6, 2021, or allegedly flow from the subsequent independent actions of third parties, they are not plausibly traceable to the Architect's alleged failure to install the plaque called for by the Act, nor would they be redressed by compliance with the Act.  The absence of standing requires dismissal of all Plaintiffs' claims.

Aside from the issue of standing, Plaintiffs also fail to plausibly plead a claim for relief. Plaintiffs have failed to plead an Equal Protection claim because they have not plausibly alleged that no conceivable set of facts could legitimately explain the claimed disparate treatment that they allege from the Architect's alleged delay in complying with the Act. And Plaintiffs' mandamus claim fails because a claim for mandamus under section 1361 is not available against the Architect of the Capitol, which is part of the Legislative branch.  The mandamus statute only applies to the Executive branch.

## BACKGROUND

In March 2022, Congress enacted Public Law 117-103.  *See* 136 Stat. 49 (Mar. 15, 2022). Section 214 of Division I of that Act expressed "the sense of Congress that the United States owes its deepest gratitude to those officers of the United States Capitol Police ["Capitol Police"] and the Metropolitan Police Department of the District of Columbia ["MPD"], as well as officers from other Federal, State, and local law enforcement agencies and protective entities, who valiantly protected the United States Capitol, Members of Congress, and staff on January 6, 2021."  *Id*. § 214(a).  The Act provides that "[n]ot later than 1 year after the date of the enactment of this Act, the Architect of the Capitol shall obtain an honorific plaque listing the names of all of the officers

of the" Capitol Police, MPD, "and other Federal, State, and local law enforcement agencies and protective entities" who responded to the Capitol on January 6, 2021, and "shall place the plaque at a permanent location on the western front of the United States Capitol." *Id*. § 214(b).

The Act states that the list of names to include on the plaque shall be compiled by certain committees and subcommittees of Congress and that the names on the list so compiled "should be included on the plaque." *Id*. § 214(c)(1). The list that ultimately has been provided to the Architect consists of approximately 3,648 names.[1] McIntyre Decl. ¶ 2. The Act does not confer any private right of action to any individual who may be included on the list of names or impose any duty on the Architect to them.

As stated in the Complaint, the Architect testified before the House Appropriations subcommittee on April 8, 2025, and during this testimony the status of the plaque was raised. Compl. (ECF No. 4-1) ¶ 30; *id*. at 11 n.22 (citing https://appropriations.house.gov/schedule/hearings/budget-hearing-architect-capitol-and-library-congress).[2] The plaque referenced in that hearing, however, lists the names of approximately twenty-one law enforcement entities not the approximately 3,648 individual names of law enforcement personnel provided to the Architect. McIntyre Decl. ¶ 3. Thus, the plaque referenced in that testimony is not the plaque directed by the statute, which calls for the creation of a plaque "listing the names of all of the officers of the" Capitol Police, MPD, "and other Federal, State, and

---

[1]    Although not a limitation on the number of the names that may be included, the Act provides that the compiled list "shall include" the names of approximately 150 individuals specifically identified in paragraph (2) of section 215(c) of H.R. 4346, One Hundred Seventeenth Congress, as passed by the House of Representatives on July 28, 2021. Public Law 117-103 § 214(c)(2).

[2]    The discussion of the plaque begins in the recording cited in the Complaint at approximately the 31:30 mark.

local law enforcement agencies and protective entities" who responded to the Capitol on January 6, 2021 as reflected on a list to be provided to the Architect. A physical plaque containing that list of names has not been made. McIntyre Decl. ¶ 2

## LEGAL STANDARD

### I.    <u>Rule 12(b)(1) Standard</u>

A motion to dismiss under Federal Rule of Civil Procedure ("Rule") 12(b)(1) "presents a threshold challenge to the Court's jurisdiction," and thus "the Court is obligated to determine whether it has subject-matter jurisdiction in the first instance." *Curran v. Holder*, 626 F. Supp. 2d 30, 32 (D.D.C. 2009) (internal citation and quotation marks omitted). "[I]t is presumed that a cause lies outside [the federal courts'] limited jurisdiction," *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994), unless the plaintiff can establish by a preponderance of the evidence that the Court possesses jurisdiction. *See, e.g.*, *United States ex rel. Digital Healthcare, Inc. v. Affiliated Computer*, 778 F. Supp. 2d 37, 43 (D.D.C. 2011) (citing *Hollingsworth v. Duff*, 444 F. Supp. 2d 61, 63 (D.D.C. 2006)). Thus, the "'plaintiff's factual allegations in the complaint . . . will bear closer scrutiny in resolving a 12(b)(1) motion than in resolving a 12(b)(6) motion for failure to state a claim.'" *Id.* (quoting *Grand Lodge of Fraternal Order of Police v. Ashcroft*, 185 F. Supp. 2d 9, 13-14 (D.D.C. 2001) (internal citation and quotation marks omitted)).

When a defendant makes a facial challenge under Rule 12(b)(1), the district court must accept the allegations contained in the complaint as true and consider the factual allegations in the light most favorable to the non-moving party. *Leatherman v. Tarrant Cnty. Narcotics Intel. & Coordination Unit*, 507 U.S. 163, 164 (1993); *see also Erby v. United States*, 424 F. Supp. 2d 180, 182 (D.D.C. 2006). Motions to dismiss based on a lack of standing are properly considered under Rule 12(b)(1) because standing is a "predicate[] to jurisdiction." *Bazzi v. Gacki,* 468 F. Supp. 3d 70, 75 (D.D.C. 2020).

## II.    Rule 12(b)(6) Standard

A Rule 12(b)(6) motion tests the legal sufficiency of a complaint.  In ruling on a motion to dismiss, the Court "must construe the complaint in a light most favorable to the plaintiff and must accept as true all reasonable factual inferences drawn from well-pleaded factual allegations." *Jovanovic v. U.S.-Algeria Bus. Council*, 561 F. Supp. 2d 103, 110 (D.D.C. 2008).

Although "detailed factual allegations" are not necessary to survive a Rule 12(b)(6) motion to dismiss, a plaintiff must furnish "more than labels and conclusions" or "a formulaic recitation of the elements of a cause of action." *Bell Atl. Corp. v. Twombly*, 550 U.S. 555 (2007).  The facts alleged "must be enough to raise a right to relief above the speculative level," *id*. at 555, or must be sufficient to "state a claim for relief that is plausible on its face," *id*. at 570.  The plausibility standard "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 678 (2009).

## III.    Rule 56 Standard

Summary judgment is appropriate when the record shows that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.  *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 248 (1986); *Celotex v. Catrett*, 477 U.S. 317, 322 (1986); *Matsushita Elec. Indus. Co. v. Zenith Radio Corp*., 475 U.S. 574, 587 (1986).  The Court must view all facts, and reasonable inferences to be drawn from them, in a light most favorable to the nonmoving party, in determining whether there exists a genuine issue of material fact.  *Anderson*, 477 U.S. at 255.  The relevant inquiry in a summary judgment analysis is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law."  *Id.* at 251-52.  Indeed, there must be "sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party.  If the evidence is merely colorable, or is not significantly probative," summary judgment should be granted.  Id.

at 249-50 (citations omitted).  Rule 56 does not require the moving party to negate the non-movant's claim or to show the absence of a genuine issue of material fact.  *Celotex*, 477 U.S. at 323.  Rather, when the movant files a properly supported summary judgment motion, the burden shifts to the nonmoving party to show that there is a genuine issue for trial.  Fed. R. Civ. P. 56(c).  The non-movant cannot manufacture genuine issues of material fact with "some metaphysical doubt as to the material facts," *Matsushita Elec. Indus. Co.*, 475 U.S. at 586, or with "conclusory allegations," "unsubstantiated assertions," "or by only a 'scintilla' of evidence," *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994).

## ARGUMENT

### I.    The Complaint Should Be Dismissed Due to Plaintiffs' Lack of Standing

Plaintiffs' claims fail at the threshold for lack of standing.  Standing is a necessary predicate to any exercise of federal jurisdiction and, when it is lacking, the dispute fails to present a concrete case or controversy under Article III.  *Ariz. Christian Sch. Tuition Org. v. Winn,* 563 U.S. 125, 133-34 (2011); *Dominguez v. UAL Corp.,* 666 F.3d 1359, 1361 (D.C. Cir. 2012).  To establish standing, Plaintiffs each must demonstrate that they individually suffered an injury-in-fact, specifically an injury that is "'concrete, particularized, and actual or imminent;'" that the injury is "'fairly traceable to the challenged action;'" and that it is "likely," not speculative, that the injury is "'redressable by a favorable ruling.'" *Clapper v. Amnesty Int'l,* 568 U.S. 398, 409 (2013); *Lujan v. Defenders of Wildlife,* 504 U.S. 555, 560-61 (1992).

Plaintiffs bear the burden of establishing each element.  *Lujan,* 504 U.S. at 561.  Standing, moreover, is "'not dispensed in gross.'" *Davis v. FEC*, 554 U.S. 724, 734 (2008).  "Rather, 'a plaintiff must demonstrate standing for each claim [s]he seeks to press' and 'for each form of relief' that is sought." *Id.*; *see also Am. Freedom Law Ctr. v. Obama*, 821 F.3d 44, 52 (D.C. Cir. 2016) (dismissing Equal Protection claim for lack of standing); *Citizens for Const. Integrity v.*

- 6 -

*Census Bureau*, 115 F. 4th 618, 630 (D.C. Cir. 2024) (dismissing a mandamus claim for lack of standing).

To meet their burden of establishing standing at the pleadings stage, Plaintiffs must "make a plausible allegation of facts establishing each element of standing." *Cutler v. Dep't of Health & Hum. Servs.,* 797 F.3d 1173, 1179 (D.C. Cir. 2015).  In determining whether standing exists, "the court must . . . assume that on the merits the plaintiffs would be successful in their claims." *City of Waukesha v. EPA*, 320 F.3d 228, 235 (D.C. Cir. 2003).

Plaintiffs contend that the Architect has failed to comply with the Act because it has been several years since the Act's enactment and a plaque has not yet been placed on the western wall of the Capitol within the period required by the statute.  But even were the Court to assume non-compliance with the statute for purposes of evaluating standing, Plaintiffs still must plausibly plead facts establishing that they have experienced concrete harm, that their harm is fairly traceable to the alleged non-compliance, and that their alleged harm would be redressable by compliance with the statute.  *Spokeo, Inc. v. Robins*, 578 U.S. 330, 341 (2016).

"Article III standing requires a concrete injury even in the context of a statutory violation" and, "[f]or that reason, [a plaintiff] could not, for example, allege a bare procedural violation, divorced from any concrete harm, and satisfy the injury-in-fact requirement." *Id.*  The standing requirement "screens out plaintiffs who might have only a general legal, moral, ideological, or policy objection to a particular government action," and thus "a citizen does not have standing to challenge a government regulation simply because the plaintiff believes that the government is acting illegally." *FDA v. All. for Hippocratic Med.*, 602 U.S. 367, 381 (2024).

Here, Plaintiffs have failed to plausibly plead concrete harm to them due to the Architect's alleged non-compliance with the statute.  They claim to have experienced "psychic injuries" from

the events of January 6, 2021, that have been "compounded by the government's refusal to recognize their service," have been accused of being "crisis actors," have received death threats, and have had to take extra security precautions.  Compl. (ECF No. 4-1) ¶¶ 31-32.  But Plaintiffs have failed to plausibly plead how those intangible "injuries" constitute the requisite concrete harm.  *TransUnion LLC v. Ramirez*, 594 U.S. 413, 417 (2021). "Central to assessing concreteness is whether the asserted harm has a 'close relationship' to a harm traditionally recognized as providing a basis for a lawsuit in American courts—such as physical harm, monetary harm, or various intangible harms[.]" *Id.* at 417. Common examples include "reputational harms, disclosure of private information, and intrusion upon seclusion."  *Id*. at 425. Plaintiffs have failed to plausibly plead facts that would demonstrate a close relationship between the harms they allege and harms traditionally recognized at common law.

Moreover, their alleged harms allegedly arose from the events of January 6, 2021, Compl. ¶¶ 31-32, and otherwise flow from the subsequent "'independent actions of third parties.'" *Am. Freedom Law Ctr.*, 821 F.3d at 49.  To establish the requisite causation, Plaintiffs thus would need to plead facts to plausibly establish that the Architect's alleged non-compliance with the statute is "'a substantial factor motivating the third parties' actions.'"  *Id*.  But no allegations have been pled that could plausibly support such an inference. Accordingly, even were the Court to deem the alleged harms sufficiently concrete, they are not fairly traceable to the alleged lack of compliance with the Act and thus standing is lacking for that reason. *Nat'l Wrestling Coaches Ass'n v. Dep't of Educ.*, 366 F.3d 930, 938 (D.C. Cir. 2004) ("[M]ere 'unadorned speculation' as to the existence of a relationship between the challenged government action and the third-party conduct 'will not suffice to invoke the federal judicial power.'")

Nor would these harms be redressable by compliance with the Act. Plaintiffs have not alleged facts that could raise a plausible inference that these alleged harms would cease or be materially reduced were an honorific plaque installed. Indeed, in the Act itself, Congress already has publicly recognized the service of law enforcement personnel on January 6, 2021. *See* Public Law 117-103, § 214(a), 136 Stat. 49, 527 (Mar. 15, 2022). Despite that public recognition over three years ago, Plaintiffs contend that the harms they allegedly experienced on January 6, 2021, and allegedly continue to experience from the subsequent conduct of third parties, persist. They have pled no allegations that would allow the Court to plausibly infer that the further act of installing an honorific plaque would ameliorate any of their alleged harms which either arose from the events of January 6, 2021, or flow from the subsequent independent acts of parties not before the Court. For example, it is implausible for Plaintiffs to suggest that the installation of the plaque would stop the alleged death threats they claim to have been receiving from third parties not before this Court. Accordingly, standing does not exist for this additional reason. *See Am. Freedom Law Ctr.*, 821 F.3d at 52 ("Appellants' 'alleged injury is not fairly traceable to the transitional policy, nor would it be redressed by striking down that policy.'").

## II.  **Plaintiffs Have Failed To Plausibly Plead An Equal Protection Claim.**

Plaintiffs allege that the Architect has previously installed a memorial to two officers who died in the line of duty over two decades ago and that the Architect's failure to provide a "similar memorial" to honor law enforcement's actions at the Capitol on January 6, 2021, constitutes different treatment that violates the Equal Protection Clause. Compl. (ECF No. 4-1) ¶¶ 27, 33-35; *id*. at 9 n.16 (citing https://www.aoc.gov/explore-capitol-campus/art/chestnut-gibson-plaque) (depicting a plaque honoring two Capitol Police officers who died in the line of duty in 1998). Plaintiffs do not claim to be a protected class nor do they allege that the alleged non-compliance with the Act implicates fundamental rights. Accordingly, their Equal Protection claim is subject

to only rational basis review under a "class of one" analysis. *Sanchez v. Office of the State Superintendent of Educ.*, 45 F. 4th 388, 395 (D.C. Cir. 2022); *see also Kelly v. District of Columbia*, 893 F. Supp. 2d 115, 122 (D.D.C. 2012) ("[I]f an individual is not a member of a protected class but is arbitrarily and intentionally treated differently from others who are similarly situated — and the government has no rational basis for the disparity — the individual may qualify as a 'class of one' and be entitled to pursue an equal protection claim.").

To survive a motion to dismiss for an Equal Protection claim subject to rational basis review, a "plaintiff must plausibly allege facts showing that no reasonably conceivable state of facts could provide a rational basis for the challenged" action. *Sanchez,* 45 F. 4th at 396. Here, that means that, to state a claim, Plaintiffs must plead that there is no set of facts that could legitimately explain the alleged different treatment between the memorial installed for the two officers in 1998 and the memorial for law enforcement officers involved in the January 6, 2021 incident called for by the Act at issue here.

Plaintiffs have failed to do so because there is an obvious difference between the two situations. The example identified in the Complaint involved two officers. Here, the Act charges the Architect with obtaining a physical plaque that includes the names of all law enforcement officers on a list to be provided to the Architect—a list that ultimately contained over 3,600 names (McIntyre Decl. ¶ 2)—in dimensions that would allow for placement in a specified location. Thus, there is a "conceivable state of facts that could provide a rational basis" for the alleged disparate treatment, namely, the difference in creating and installing a plaque that includes over 3,600 names as compared to a memorial honoring two individuals. Because Plaintiffs have not alleged facts that negate that possible explanation for their alleged different treatment, their Equal Protection claim should be dismissed or summary judgment granted on that claim in favor of the Architect. For the

same reason, Plaintiffs also have failed to plausibly plead another required element of an Equal Protection claim, namely, the disparate treatment of "similarly situated parties." *3883 Conn. LLC v. Dist. of Columbia*, 336 F.3d 1068, 1075 (D.C. Cir. 2003).

## III.   Mandamus Relief Is Not Available

Plaintiffs' claim for mandamus under 28 U.S.C. § 1361 should be dismissed because mandamus is not available against the Legislative branch, of which the Architect of the Capitol is part.  Section 1361 provides that "[t]he district courts shall have original jurisdiction of any action in the nature of mandamus to compel an officer or employee of the United States or any agency thereof to perform a duty owed to the plaintiff."[3]  The phrase "an officer or employee of the United States or any agency thereof," however, is a reference solely to the Executive branch.  *See, e.g., Leopold v. Manger,* 102 F. 4th 491, 494 (D.C. Cir. 2024) (assuming without deciding that decisions from other courts of appeal limiting section 1361 to the Executive branch officials "are correct"); *Semper v. Gomez*, 747 F.3d 229, 250 (3d Cir. 2014) ("[I]t appears that Congress, in enacting § 1361 …, 'was thinking solely in terms of the executive branch ….'" (quoting *Liberation News Serv. v. Eastland*, 426 F.2d 1379, 1384 (2d Cir. 1970)); *United States v. Choi*, 818 F. Supp. 2d 79, 84 (D.D.C. 2011) (holding that a district court may not issue a writ of mandamus to a magistrate judge under section 1361 because a magistrate judge is not a member of the Executive branch).  Because the Architect is part of the Legislative branch, *Maynard v. Architect of the Capitol*, 544 F. Supp. 3d 64, 79 (D.D.C. 2021), Plaintiffs' claim under section 1361 should be dismissed.

---

[3]   Further, as already addressed in the section on standing, the Act does not impose any duty on the Architect to the Plaintiffs.  *See All. for Hippocratic Med.*, 602 U.S. at 381 ("a citizen does not have standing to challenge a government regulation simply because the plaintiff believes that the government is acting illegally").

## CONCLUSION

For the foregoing reasons, Defendants' motion should be granted, and this action should

be dismissed or, alternatively, summary judgment granted in favor of the Architect.

Respectfully submitted,

JEANINE FERRIS PIRRO
United States Attorney

PETER C. PFAFFENROTH, D.C. BAR #496637
Chief, Civil Division

By:   /s/ Jeremy S. Simon
       JEREMY S. SIMON, D.C. Bar #447956
       Assistant United States Attorney
       601 D Street, N.W.
       Washington, D.C. 20530
       (202) 252-2528
       Jeremy.Simon@usdoj.gov

*Attorneys for the United States of America*