UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| HARRY DUNN *et al.*,<br><br>   *Plaintiffs*,<br><br> v.<br><br>THOMAS AUSTIN, in his official capacity as Architect of the Capitol *et al.*,<br><br>   Defendants. | Case No. 25-CV-1844 (DLF) |

**PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION TO DISMISS**

  Plaintiffs Harry Dunn and Daniel Hodges were among the officers who protected the Capitol from rioters on January 6, 2021. For their bravery, they and their fellow officers were to be honored with a plaque at the Capitol, to be installed by March 15, 2023.

  Years since that deadline passed, the plaque is not installed, and Officers Dunn and Hodges seek to have the Architect of the Capitol comply with the law and ensure that history is not forgotten. Defendants move to dismiss the case, arguing that the officers lack standing to sue or, in the alternative, fail to show that they were treated unfairly. These arguments should be rejected, and the motion to dismiss should be denied.

**I. Legal Standard**

  Defendants have moved to dismiss this case under Federal Rules of Civil Procedure 12(b)(1) and (6), challenging this Court's jurisdiction and the sufficiency of Plaintiffs' claims, respectively. ECF No. 27 (MTD) at 4-5. Defendants have also moved for summary judgment, arguing that there is no genuine issue as to any material fact, and that they are entitled to judgment as a matter of law. *Id.* at 5.

1

"When reviewing a motion to dismiss for lack of jurisdiction [under Rule 12(b)(1)], the court must 'assume the truth of all material factual allegations in the complaint and construe the complaint liberally.'" *Arrington v. United States Parole Comm'n*, No. 24-CV-1718 (DLF), 2025 WL 1726038, at *1 (D.D.C. June 20, 2025) (Friedrich, J.) (quoting *Am. Nat. Ins. Co. v. FDIC*, 642 F.3d 1137, 1139 (D.C. Cir. 2011)). Further, when considering a motion to dismiss for failure to state a claim under Rule 12(b)(6), "the Court construes the complaint 'in favor of the plaintiff, who must be granted the benefit of all inferences that can be derived from the facts alleged.'" *Ajenifuja v. Dangote*, 485 F. Supp. 3d 120, 125 (D.D.C. 2020) (Friedrich, J.) (quoting *Hettinga v. United States*, 677 F.3d 471, 476 (D.C. Cir. 2012)). Similarly, in reviewing a motion for summary judgment, "'[t]he Court must draw all reasonable inferences in favor of the nonmoving party, and it may not make credibility determinations or weigh the evidence.'" *Moore-Davis v. U.S. Dep't of the Navy*, 694 F. Supp. 3d 116, 121 (D.D.C. 2023) (Friedrich, J.) (quoting *Reeves v. Sanderson Plumbing Prods.*, 530 U.S. 133, 150 (2000)).

## II.     Argument

### A.     Plaintiffs Have Standing

Because the Architect of the Capitol has failed to install the plaque that honors their and their comrades' heroism, Plaintiffs have standing to sue and ultimately to compel the Architect to follow the law. This is so because, as required to bring suit, Plaintiffs have (1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992); *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016).

Plaintiffs have suffered injuries because the office of the Architect—an agency within the United States Congress—has failed to follow the law. As explained in Plaintiffs' complaint, by ignoring the law, Congress "suggests that the officers are not worthy of being recognized,

because Congress refuses to recognize them." ECF No. 4 (Compl.) at ¶ 29. Their psychic injuries from the attack on the Capitol have been "compounded by their government's refusal to recognize their service." *Id.* at ¶ 31. Moreover, they have been accused of being crisis actors and left-wing conspiracy agents and regularly receive death threats. *Id.* at ¶ 32. As a result, Officer Dunn has had to fortify security at his home, and both men now either carry weapons, or have applied to do so. *Id.* Officer Hodges has been diagnosed with Major Depressive Disorder and Anxiety Adjustment Disorder. *Id.* And Officer Dunn, who continues to be called racial epithets, has had to resign from the Capitol Police, unable to serve officials who refuse to recognize the reality of January 6, 2021. *Id.*

These harms are directly traceable to the Architect's refusal to follow the law. Plaintiffs' psychic injuries have been compounded by Congress's (and for Officer Dunn, who worked for the Capitol Police, his former employer's) refusal to recognize their service, just like cases of soldiers whose heroism the government refused to acknowledge. *See, e.g.*, *Monk v. United States*, No. 3:22-CV-1503 (SRU), 2024 WL 1344712, at *8 (D. Conn. Mar. 29, 2024) (denying motion to dismiss where a Black soldier experienced emotional, dignitary, and reputational harm from his wrongful termination); *Farrell v. United States Dep't of Def.*, No. 23-CV-04013-JCS, 2024 WL 3090854, at *1 (N.D. Cal. June 20, 2024) (denying motion to dismiss where LGBTQ+ soldiers were deprived of "society's admiration for their service" through their wrongful termination.).

The actions of third parties—the death threats, accusations, and racial epithets—too are encouraged by Congress's refusal to follow the law, as government action can affect people's reputations among those outside of government. *See, e.g.*, *McGinnis v. D.C.*, 65 F. Supp. 3d 203, 222 (D.D.C. 2014) (denying motion to dismiss where government's allegedly defamatory

government statements may harm a former employee's reputation with other employers). That the government has gone to such lengths to rewrite the history of January 6, 2021 suggests that it too believes its actions can affect the beliefs of those outside of government.

Success in this case will directly redress the harms that Plaintiffs have experienced. If the government finally acknowledges Plaintiffs' sacrifice, the psychic injuries caused by the government's failure to follow the law will be lessened. And because people take their cues to some degree from national political leaders, the reputational harm to plaintiffs—to say nothing of the threats and accusations that follow from that reputational harm—will diminish. *Meese v. Keene*, 481 U.S. 465, 476 (1987) (affirming denial of motion to dismiss where enjoining government action "would at least partially redress" appellee's broader "reputational injury.").

Defendants contest all this. Initially, they argue that the harms that Plaintiffs have experienced are not the kinds traditionally recognized at common law. MTD at 8 (citing *TransUnion LLC v. Ramirez*, 594 U.S. 413, 417 (2021)). But the case that Defendants cite—*TransUnion*—recognizes reputational harms like those Plaintiffs experienced; Defendants even quote the relevant section. MTD at 8 ("Common examples [of concrete harms] include 'reputational harms . . . .'" (quoting *TransUnion*, 594 U.S. at 425)).

More broadly, Courts have long recognized psychological injuries as the basis for constitutional claims. *See, e.g.*, *Estate of Heiser v. Islamic Republic of Iran*, 466 F. Supp. 2d 229, 305 (D.C. Cir. 2006); *Am. C.L. Union of Ohio Found., Inc., v. DeWeese*, 633 F.3d 424,429 (6th Cir. 2011) ("psychological injury [is] in fact sufficient to confer standing."); *Cath. League for Religious & Civ. Rts.*, 624 F.3d 1043, 1053 (9th Cir. 2010); *Suhre v. Haywood Cnty.*, 131 F.3d 1083, 1085-86 (4th Cir. 1997) ("rules of standing recognize that noneconomic or intangible injury may suffice to make . . . [a] claim justiciable."). And the death threats that Plaintiffs

4

experienced are certainly cognizable harms. *TransUnion*, 594 U.S. at 417 (recognizing "physical harm" as providing a basis for lawsuits).

Alternatively, Defendants argue, even if the officers did experience a cognizable harm, it is not traceable to Defendants' failure to follow the law, nor can such harm be redressed by installing the required plaque. Defendants characterize the harms Plaintiffs face as perpetrated only by unnamed third parties. MTD at 8. But, as explained above, Plaintiffs allege that Defendants have directly harmed them by refusing to honor their sacrifice. Compl. at ¶¶ 29-32. In particular, Defendants' refusal to follow the law has compounded their psychic injuries and harmed their reputations. Officer Hodges now suffers from Major Depressive Disorder and Anxiety Adjustment Disorder and Officer Dunn finds himself unable to work for an employer that refuses to recognize his sacrifice. These are harms caused directly by Defendants' noncompliance with the law, not by third parties.

Further, Plaintiffs have plausibly alleged that the actions of third parties—the death threats and accusations of being crisis actors, people calling Office Dunn racial epithets—are caused in part by Congress's failure to recognize them. Politicians have worked to erase what Courts in this district have called the "tragic" and "immutable" truth of January 6, 2021. Order on Motion to Dismiss, *United States v. Banuelos*, 24-CR-135 (D.D.C. Jan. 22, 2025) ECF No. 30 (Chutkan, J.); Order on Motion to Dismiss, *United States v. Box*, 22-CR-413 (D.D.C. Jan. 22, 2025) ECF No. 112 (Kollar-Kotelly, J.). Plaintiffs in their complaint describe some of those efforts, including by those who supervise the Architect of the Capitol. Compl. at ¶¶ 25-30. Those efforts only make sense if they have the intent and effect of changing people's perceptions of the attack on the Capitol and those who tried to defend the people inside. For this reason, the harms caused by third parties may be redressed in part by compelling Defendants to follow the law.

Courts have long conferred standing on plaintiffs who have suffered far less direct injuries. In fact, there is an entire line of cases in which plaintiffs had standing merely because of the "aesthetic" harms that various projects posed. *See, e.g.*, *Sierra Club v. Morton*, 405 U.S. 727, 734 (1972) (reasoning that such interests "are important ingredients of the quality of life in our society" that warrant judicial protection); *Ctr. for Biological Diversity v. EPA*, 861 F.3d 174, 179, 183 (D.C. Cir. 2017) (holding that plaintiff's "recreational, scientific, aesthetic, educational, moral, spiritual, and conservational interest" in observing a type of beetle in its natural habitat "for purely aesthetic purposes" was "undeniably a cognizable interest for purpose of standing"); *Moreau v. FERC*, 982 F.2d 556, 565 (D.C. Cir. 1993) (holding that a pipeline presented a "permanent aesthetic eyesore" sufficient to confer standing) *overruled on other grounds by Allegheny Defense Project v. FERC*, 964 F.3d 1 (D.C. Cir. 2020). Moreover, courts have frequently recognized standing for psychological injuries caused by direct contact with offensive symbols. *Vasquez v. Los Angeles Cnty.*, 487 F.3d 1246, 1250-51 (9th Cir. 2007); *Suhre v. Haywood Cnty.*, 131 F.3d 1083, 1087 (4th Cir. 1997); *Foremaster v. City of St. George*, 882 F.2d 1485, 1490-91 (10th Cir. 1989); *Saladin v. City of Milledgeville*, 812 F.2d 687, 692-93 (11th Cir. 1987); *Am. C.L. Union of Kentucky v. Grayson Cnty., Ky.*, 591 F.3d 837, 843-44 (6th Cir. 2010); *Green v. Haskell Cnty. Bd. Of Comm'rs*, 568 F.3d 784, 794 (10th Cir. 2009); *Books v. Elkhart Cnty., Ind.*, 401 F.3d 857, 861-62 (7th Cir. 2005).

Here, the harms plaintiffs have experienced are far more than aesthetic or generally offensive. Unique among memorials, the plaque was meant to honor Plaintiffs and their fellow officers by name. The enabling legislation began with a statement that "that the United States owes its deepest gratitude to those officers of the United States Capitol Police and the Metropolitan Police Department of the District of Columbia." Pub. L. 117-103 Sec. 214(a). It

then directed the Architect of the Capitol to obtain a plaque "listing the names of all of the officers . . . who responded to the violence that occurred at the United States Capitol on January 6, 2021," and specifically directed that the plaque honor those officers Congress previously identified by name, including Officer Hodges. Pub. L. 117-103 Sec. 214(c) (citing H.R. 4346, 117th Congress (July 28, 2021)). "[W]here there is a personal connection between the plaintiff and the challenged display in his or her own community, standing is more likely to lie." *Suhre v. Haywood Cnty.*, 131 F.3d 1083, 1087 (4th Cir. 1997). Standing has frequently been granted to those who live in the same community as a contested memorial. *See, e.g.*, *Washegesic v. Bloomingdale Pub. Sch.*, 33 F.3d 679, 683 (6th Cir. 1994) ("The practices of our own community may create a larger psychological wound than someplace we are just passing through."); *Saladin v. City of Milledgeville*, 812 F.2d 687, 693 (11th Cir. 1987) ("The plaintiffs here . . . are part of the City and are directly affronted by the presence of the allegedly offensive word on the city seal."). Here Plaintiffs do not simply live near the memorial: the plaque memorializes them specifically.

      In short, Plaintiffs' connection to the memorial is direct, and the harm they have suffered by Defendants' failure to follow the law is clear. Given that parties with connections far more tenuous to contested memorials have been granted standing to sue, it would be unfair to deny Plaintiffs the opportunity to be heard in court here.

      Moreover, denying Plaintiffs standing would create perverse incentives, as a congress or president could deny a political opponent a legally owed medal, or tear down the name on a performance center, without legal consequence. Conversely, granting standing here would not open the figurative floodgates of litigation over contested memorials. Plaintiffs are in the unusual

7

position of having a memorial to them specifically. They should be given the chance to ensure that the memorial is installed, as required by law.

### B. Plaintiffs Have Alleged an Equal Protection Clause Violation

Defendants argue that, even if Plaintiffs have standing, they have not plausibly alleged an Equal Protection Clause violation. "The Equal Protection Clause of the Fourteenth Amendment commands that no State shall deny to any person within its jurisdiction the equal protection of the laws, which is essentially a direction that all persons similarly situated should be treated alike." *City of Cleburne, Tex. v. Cleburne Living Ctr.*, 473 U.S. 432, 439 (1985). This command extends to the federal government through the Fifth Amendment. *Richardson v. Trump*, 496 F. Supp. 3d 165, 178 n. 15 (D.D.C. 2020).

A government action that burdens individuals unequally but does not burden a "suspect class" must survive "rational-basis" review. *Steffan v. Aspin*, 8 F.3d 57, 63 (D.C. Cir. 1993) (invalidating policy barring homosexuals from the Navy on rational basis review), *reh'g in banc granted, judgment vacated* (Jan. 7, 1994), *on reh'g en banc sub nom. Steffan v. Perry*, 41 F.3d 677 (D.C. Cir. 1994).

> Although the court has a limited role under rationality review, that role remains significant as a bulwark against unreasonable and illegitimate restrictions. When individuals are deprived of the equal protection of the laws by a governmental actor for entirely arbitrary reasons, or for reasons that rest solely upon irrational and invidious prejudices against a class of people (whether or not a "suspect class"), a court should declare the government action unconstitutional even under rational-basis review. Otherwise, rationality review would be tantamount to no review at all—a result manifestly inconsistent with Supreme Court precedent.

*Id.* (internal citations omitted). Courts have repeatedly invalidated policies under rational basis review. *See, e.g.*, *Moreno v. U.S. Dep't of Agric.*, 345 F. Supp. 310 (D.D.C. 1972) (invalidating policy that withheld welfare payments to unrelated people who lived together), *aff'd*, 413 U.S. 528 (1973); *Zobel v. Williams*, 457 U.S. 55 (1982) (invalidating Alaska payment plan that

favored established residents over new residents); *City of Cleburne, Tex. v. Cleburne Living Ctr.*, 473 U.S. 432, 439 (1985) (invalidating permitting law that burdened mentally disabled residents under rational basis review).

Defendants argue that if their violation of the law is to be evaluated under rational basis review, Plaintiffs must foreclose the possibility of every permissible reason for their treatment in order to survive a motion to dismiss. MTD at 10. Defendants then try to manufacture a permissible reason by submitting an affidavit from an employee of the Architect. MTD Ex. 2 (MacIntyre Decl.) at 1. In that affidavit, the employee claims that a memorial plaque would need to include the names of approximately 3,648 people. *Id.* In their brief, Defendants then speculate—though, notably, the affidavit does not say—that this explains why they have not complied with the law.

As an initial matter, Defendants' use of an affidavit to manufacture a dispute is inappropriate at this stage. Unlike Defendants' challenge to Plaintiffs' standing, which is made under Federal Rule of Civil Procedure 12(b)(1), their challenge to Plaintiffs' Equal Protection Clause claim is made under Rule 12(b)(6), as it an argument that Plaintiffs have failed to state a legally cognizable claim. In a challenge under Rule 12(b)(1), Defendants may submit extraneous evidence to bolster their claim; in a challenge under Rule 12(b)(6) they must rely only on the allegations in the complaint. *Compare Philipp v. Stiftung Preussischer Kulturbesitz*, 628 F. Supp. 3d 10, 19 (D.D.C. 2022) ("In resolving a motion to dismiss pursuant to Rule 12(b)(1), the court can, and often must, go beyond the allegations in the complaint.") *with McGary v. Hessler-Radelet*, 156 F. Supp. 3d 28, 32 (D.D.C. 2016) ("A motion to dismiss for failure to state a claim under Rule 12(b)(6), in contrast, must accept the factual allegations of the complaint as true and may not rely on evidence or factual material beyond those allegations. A defendant can therefore

9

prevail on a 12(b)(6) motion only by demonstrating that the facts, as alleged in the complaint, do not warrant relief as a matter of law.").

Nor is the affidavit persuasive if considered as part of Defendants' motion for summary judgment. In a motion for summary judgment, the parties may submit, "pleadings, depositions, answers to interrogatories, admissions on file, and affidavits," *Bortell v. Eli Lilly & Co.*, 406 F. Supp. 2d 1, 4 (D.D.C. 2005) (citing *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986)), though the "'evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor.'" *Id.* (quoting *Liberty Lobby,* 477 U.S. at 255). With their affidavit alone, Defendants have failed to show that there is no genuine issue as to any material fact and that they are entitled to judgment as a matter of law. Rather, Defendants have asserted, but not proven, how many people must be listed on plaque, nor have they explained why engraving names is significantly harder than engraving full portraits, like that on the plaque to fallen officers installed in 1999. *See Chestnut-Gibson Plaque*, ARCHITECT OF THE CAPITOL, https://www.aoc.gov/explore-capitol-campus/art/chestnut-gibson-plaque (last visited Dec. 22, 2025). Moreover, Defendants have not even asserted in their affidavit that the number of names explains why they have passed their legal deadline by over two years. Notably, Defendants do concede that a plaque has been made, undercutting their unsworn speculation that the plaque must take many years to make. MacIntyre Decl. at 1.

Even if the Court were to consider Defendants' affidavit, it would not alter the calculus of this case. Defendants' affidavit only says how many names would be listed on the plaque. It says nothing about whether that number delayed the plaque's production by years. And even if it did, it does not explain why Defendants broke the law. Defendants argue that this *possible* list of names, which *possibly* delayed the memorial's production, provides a "conceivable state of facts

10

that could provide a rational basis" for the disparate treatment between the officers who protected the Capitol on January 6, 2021, and other officers that Congress previously honored. MTD at 10. But the relevant inquiry is not whether there was a rational basis for Defendants to take longer making this plaque, but whether there was a rational basis for Defendants to break the law here, but not elsewhere. *Compare* Pub. L. 117-103 Sec. 214(a) (directing the Architect of the Capital to install a plaque honoring the officers who defended the Capitol on January 6, 2021) *with* H. Con. Res. 310 (1998) (directing the Architect of the Capitol to install a plaque honoring Capitol Police officers killed in the line of duty). Courts do frequently recognize a rational basis for the government to enact and follow its own laws and regulations. To Plaintiffs' knowledge, no court has ever found a rational basis for the government to break its own laws.

      Ultimately, to survive a motion to dismiss, Plaintiffs "must allege facts sufficient to overcome the presumption of rationality that applies to government classifications and offer more than a conclusory assertion that the policy is without rational basis." *Hill v. United States Dep't of the Interior*, 699 F. Supp. 3d 1, 30 (D.D.C. 2023) (internal quotations omitted), *aff'd sub nom. Hill v. United States Dep't of Interior*, 151 F.4th 420 (D.C. Cir. 2025). "[P]leading facts plausibly showing a challenged policy's irrationality will adequately negate any rational explanation for the policy so as to survive a motion to dismiss, without the complaint's needing to refute a laundry list of potential justifications." *Sanchez v. Off. of State Superintendent of Educ.*, 45 F.4th 388, 396 (D.C. Cir. 2022). In their complaint Plaintiffs have explained that Defendants have broken the law, and have done so because of a political effort to rewrite the history of the attack on the Capitol. There is no rational explanation for Defendants' failure to follow the law and the disparate treatment Plaintiffs and their fellow officers have experienced, and Defendants have been unable to manufacture one.

## C. This Court Can Compel Defendants to Follow the Law

Finally, Defendants argue that this court lacks mandamus power to compel Congress to act. MTD at 11. None of the cases Defendants cite directly decide that the Court's mandamus power does not extend to Congress. The Court in *Leopold v. Manger* "assume[d] without deciding" that this was so. 102 F.4th 491, 494 (D.C. Cir. 2024). The only case that *Manger* cited in turn about the mandamus power and Congress concerned attempts to compel or prohibit legislative functions. Specifically, in *Liberation News Serv. v. Eastland* plaintiffs tried to restrain a Senate subcommittee from enforcing subpoenas issued as part of a congressional investigation. 426 F.2d 1379 (2d Cir. 1970). The other cases Defendants cite concern courts' power to compel Congress to act. *United States v. Choi* and *Semper v. Gomez* both concerned the power to compel judges, not Congressional agencies, to act. MTD at 11 (citing *Semper v. Gomez*, 747 F.3d 229 (3d Cir. 2014); *United States v. Choi*, 818 F. Supp. 2d 79, 84 (D.D.C. 2011)).

Moreover, in other contexts, the Architect of the Capitol has been treated like an executive branch agency. For instance, the Architect is considered a "Federal agency" within the meaning of the Tucker Act, the law concerned with contract disputes with the government. *Bell BCI Co. v. United States*, 56 Fed. Cl. 465, 468 (2003). This makes sense: few would contract with the Architect if they had none of the legal protections that contractors with the rest of the government have. Similarly, few would work for or with the Architect if courts had no power to compel it follow the law. Because of the Architect's administrative responsibilities, everyone benefits—including the office of the Architect itself—by the judiciary having authority over it.

Regardless, even if this Court decides it does not have the power to compel action under the mandamus statute, it can still entertain Plaintiffs' Equal Protection Claim. Courts in this district have frequently heard—and found merit to—constitutional challenges to congressional offices' actions. *See, e.g.*, *Washington Activity Grp. v. White*, 342 F. Supp. 847 (D.D.C. 1971),

aff'd, 479 F.2d 922 (D.C. Cir. 1973) (granting plaintiffs' motion for summary judgment on congressional protest rules that violated plaintiffs' rights to equal protection and free speech). *Mahoney v. United States Capitol Police Bd.*, 566 F. Supp. 3d 1 (D.D.C.), *on reconsideration in part*, 566 F. Supp. 3d 22 (D.D.C. 2022) (denying motion to dismiss when clergyman alleged selective enforcement of Equal Protection Clause when he was denied the chance to hold a prayer vigil at the Capitol); *Walker v. Jones*, 733 F.2d 923 (D.C. Cir. 1984) (reversing dismissal of lawsuit by congressional food services manager alleging an equal protection violation).

And courts in this district have frequently heard lawsuits, primarily on employment matters, against the Architect specifically. *See, e.g.*, *In re Architect of Capitol Emp. Disp.*, No. 1:23-CV-2334, 2024 WL 3359515, at *1 (D.D.C. July 10, 2024) (denying motion to dismiss in suit alleging discrimination by the Architect of the Capitol). Finally, this Court can declare that Defendants are, in fact, violating the law under the Declaratory Judgment Act, referenced in Plaintiffs' Equal Protection cause of action. Compl. at ¶ 37 (citing 28 U.S.C. § 2201).

**III.   Conclusion**

The effort to compel Defendants to follow the law and install the January 6 memorial plaque is about making sure that history is not rewritten, and that the horror—and heroism—of that day is not forgotten. It is also about making sure that Officers Dunn and Hodges, along with all the other women and men who protected those inside the Capitol that day, are afforded the recognition they deserve. So that the harm to them is remedied, and that history is not erased, Plaintiffs ask that Defendants' motion be denied.

Respectfully submitted,

*Officers Harry Dunn and Daniel Hodges, through their attorney*

*/s/ Brendan Ballou*
Brendan Ballou
D.C. Bar No. 241592
Lichten & Liss-Riordan
729 Boylston St. Ste. 2000
Boston, MA 02116
(617) 994-5800
bballou@llrlaw.com