UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

HARRY DUNN, et al.,

*Plaintiffs,*

v.

THOMAS AUSTIN, in his official capacity as Architect of the Capitol, et al,

*Defendants.*

Civil Action No. 25-1844 (DLF)

**REPLY IN FURTHER SUPPORT OF MOTION TO DISMISS OR IN THE ALTERNATIVE FOR SUMMARY JUDGMENT**

Defendants the Architect of the Capitol and Thomas Austin, in his official capacity as Architect of the Capitol (the "Architect"), by and through undersigned counsel, reply as follows to Plaintiffs' opposition to their motion to dismiss this action or, alternatively, for summary judgment.

Plaintiffs allege a violation of the Equal Protection Clause of the Fifth Amendment for the alleged failure of the Architect to comply with the provisions of Public Law 117-103 (March 15, 2022) (the "Act"), providing for the obtainment and placement on the western front of the Capitol of an honorific plaque for the law enforcement officers who responded to the events at the Capitol on January 6, 2021, and also seek mandamus relief under 28 U.S.C. § 1361. *See generally* Compl. (ECF No. 4-1). As established in Defendants' motion, this action should be dismissed because Plaintiffs lack standing to assert their Equal Protection or mandamus claims and, in addition, Plaintiffs have failed plausibly to plead either claim—the former because the record reflects a "conceivable state of facts [that] could provide a rational basis" for the alleged disparate treatment and the latter because relief under section 1361 is not available against the legislative branch of

which the Architect is a part. Defs.' Mot. (ECF No. 27) at 6-11. The limited arguments that Plaintiffs raise in opposition, which are addressed below, fail to provide a basis for denial of Defendants' motion.

## ARGUMENT

### I. The Complaint Should Be Dismissed Due to Plaintiffs' Lack of Standing

Plaintiffs' description of their alleged basis for standing demonstrates why it is lacking here. They argue that "Plaintiffs have suffered injuries because the office of the Architect . . . has failed to follow the law." Opp'n (ECF No. 29) at 2. But that type of assertion, when it is unmoored from any redressable concrete harm, is insufficient to establish standing. As the Supreme Court has explained, the standing requirement "screens out plaintiffs who might have only a general legal, moral, ideological, or policy objection to a particular government action," and thus "a citizen does not have standing to challenge a government regulation simply because the plaintiff believes that the government is acting illegally." *FDA v. All. for Hippocratic Med.*, 602 U.S. 367, 381 (2024); *see also Stover v. Nat'l Park Serv.*, Civ. A. No. 24-639 (TJK), 2025 U.S. Dist. LEXIS 254010, at *7 (D.D.C. Dec. 3, 2025) ("a mere 'injury in law' does not establish concreteness").

Plaintiffs must do more than allege a bare "statutory violation"; they must plausibly plead that they "have (1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338, 341 (2016). In assessing whether a complaint has adequately pled standing, this Court must set "mere conclusory statements aside" and determine whether the pleading contains "sufficient factual matter, accepted as true, to support an inference of standing" that is plausible on its face. *Air Excursions v. Yellen*, 66 F.4th 272, 277 (D.C. Cir. 2023). This "requires more than a sheer possibility that the plaintiff has standing to sue." *Id*. at 278.

The absence of even one of the three requirements for standing is fatal to Plaintiffs' claims. As discussed below, Plaintiffs have failed to plausibly plead any of them.

*First,* Plaintiffs identify in their opposition as the requisite "concrete harm" alleged "reputational injury." Opp'n (ECF No. 29) at 4.  Although reputational harm can meet the injury-in-fact requirement when "associated with the tort of defamation," *TransUnion LLC v. Ramirez*, 594 U.S. 413, 432 (2021), reliance on such harm is unavailing here, where the challenged conduct involves alleged inaction by the Architect, not alleged defamatory statements.  Specifically, there is no alleged "misleading statement" by the Architect that has been pled, nor could the challenged inaction plausibly be characterized as "bear[ing] a sufficiently close relationship to the harm from a false and defamatory statement" so as to characterize Plaintiffs' alleged intangible harm as being reputation-based within the meaning of *TransUnion*. Indeed, reputational harm is not alleged in the Complaint, nor does the term "reputation" appear in that pleading.  Defendants, moreover, established in their motion to dismiss that the alleged "psychic injuries" identified in the Complaint (Compl. (ECF No. 4-1) ¶¶ 31-32) fail to meet the injury-in-fact requirement because they do not bear a "'close relationship' to a harm traditionally recognized as providing a basis for a lawsuit in American courts" with respect to the alleged inaction at issue, which is the only challenged conduct.  Defs.' Mot. (ECF No. 27) at 7-8.  Tellingly, Plaintiffs have not meaningfully responded to that argument.

Plaintiffs' reliance on *McGinnis v. District of Columbia*, 65 F. Supp. 3d 203 (D.D.C. 2014), merely highlights the absence of reputation-based harm here. Opp'n (ECF No. 29) at 3.  In *McGinnis*, unlike here, the plaintiff's claim was based on an alleged false statement, namely, that the plaintiff was "falsely accused of having lied on her application to the [Metropolitan Police Department] and terminated from employment" on that allegedly inaccurate basis.  *Id.* at 208.

Similarly, in *Meese v. Keene*, 481 U.S. 465 (1987), also cited in the opposition, the question was whether a plaintiff had standing to challenge a statute's use of the term "political propaganda" to identify certain expressive materials that had to comply with the statute's foreign registration requirements when, by virtue of that designation, a plaintiff could be wrongly regarded by the public as the disseminator of foreign political propaganda by exhibiting films that fell within that statutory designation. Because the plaintiff "could not exhibit the films without incurring a risk of injury to his reputation," the Court determined that the plaintiff had adequately established "reputational harm" as an alleged injury-in-fact. *Id*. at 475. This case, in contrast, alleges only that the Architect has failed timely to comply with a statutory directive, not that the Architect affirmatively characterized Plaintiffs or their past conduct in any misleading way.

*Second*, Plaintiffs have failed plausibly to allege that the intangible harm actually alleged in the Complaint—so-called "psychic injuries" (Compl. (ECF No. 4-1) ¶¶ 31-32)—is fairly traceable to the alleged inaction by the Architect, which is the only "conduct" that they challenge. As pled in the Complaint, those alleged harms allegedly arose from the events of January 6, 2021, and otherwise flow from the subsequent "'independent actions of third parties.'" *Am. Freedom Law Ctr. v. Obama*, 821 F.3d 44, 49 (D.C. Cir. 2016); Compl. (ECF No. 4-1) ¶¶ 31-32. None of the conduct that Plaintiffs identify in the Complaint as causing or "compound[ing]" the alleged psychic harm they claim to have experienced on January 6, 2021—such as being called "'crisis actors'" and "left-wing conspiracy agents," receiving "death threats," or being "called racial epithets"—is attributed in the Complaint to the Architect. Compl. (ECF No. 4-1) ¶¶ 31-32. Instead, the Complaint attributes such conduct to unidentified third parties. *Id*. Plaintiffs acknowledge in their opposition their failure to attribute any such conduct to the Architect by pointing not to the Architect but to alleged failures by unidentified members of "Congress," by

unspecified "[p]oliticians" and by unnamed individuals who allegedly "supervise the Architect of the Capitol." Opp'n (ECF No. 29) at 5.

As explained in Defendants' motion, to establish the requisite causation here, Plaintiffs would need to plead facts to plausibly establish that the Architect's alleged non-compliance with the statute is "'a substantial factor motivating the third parties' actions.'" *Am. Freedom Law Ctr.*, 821 F.3d at 49; Defs.' Mot. (ECF No. 27) at 8. But no allegations have been pled that could plausibly support such an inference. Plaintiffs make no meaningful effort to meet this burden, resting solely on the implausible and conclusory assertion that Plaintiffs' alleged harms—including Officers Hodges' alleged mental health diagnosis—are "caused directly by Defendants' noncompliance with the law, not by third parties." Opp'n (ECF No. 29) at 5. Yet, "mere 'unadorned speculation' as to the existence of a relationship between the challenged government action and the third-party conduct 'will not suffice to invoke the federal judicial power.'" *Nat'l Wrestling Coaches Ass'n v. Dep't of Educ.*, 366 F.3d 930, 938 (D.C. Cir. 2004).

Moreover, to the extent Plaintiffs contend that Officer Dunn "finds himself unable to work for an employer that refuses to recognize his service," Opp'n (ECF No. 29) at 5, that is not only disconnected from the Architect (who is not alleged to be Officer Dunn's employer)[1] but also is a voluntary choice that is insufficient to establish causation. *Huron v. Berry,* 12 F. Supp. 3d 46, 52 (D.D.C. 2013) (citing *Petro-Chem Processing, Inc. v. EPA,* 866 F.2d 433, 438 (D.C. Cir. 1989); *Grocery Mfrs. Ass'n v. EPA,* 693 F.3d 169, 177 (D.C. Cir. 2012)). Indeed, the D.C. Circuit has

---

[1] To the extent that is a reference to Congress, Defendants note that the statute at issue, Public Law 117-103, expressed "the sense of Congress that the United States owes its deepest gratitude to those officers of the United States Capitol Police ['Capitol Police'] and the Metropolitan Police Department of the District of Columbia ['MPD'], as well as officers from other Federal, State, and local law enforcement agencies and protective entities, who valiantly protected the United States Capitol, Members of Congress, and staff on January 6, 2021." *Id*. § 214(a).

"consistently held that self-inflicted harm doesn't satisfy the basic requirements for standing" because it is neither a cognizable "'injury,'" nor is it "fairly traceable to the defendant's challenged conduct." *Nat'l Family Planning & Reprod. Health Ass'n, Inc. v. Gonzales*, 468 F.3d 826, 831 (D.C. Cir. 2006).

*Third*, as established in Defendants' motion, Plaintiffs have failed to allege facts that could raise a plausible inference that the harms they allege would cease or be materially reduced were an honorific plaque installed. Defs.' Mot. (ECF No. 27) at 9. Plaintiffs have no answer to this argument other than to speculate, without any basis in the allegations in the Complaint, that "the harms caused by third parties may be redressed in part by compelling Defendants to follow the law." Opp'n (ECF No. 29) at 5.

Finally, Plaintiffs rely on inapposite authority to contend that courts have conferred standing on "parties with connections far more tenuous to contested memorials" than their connection to the plaque called for by the Act. Opp'n (ECF No. 29) at 7. The cited cases are not on point because they do not involve the alleged failure to display a plaque or other memorial. Instead, they involve First Amendment challenges to religious symbols that *have been displayed* where the alleged harm arises from contact with the display and where the redressability requirement allegedly can be met by removing the allegedly offending display. *See, e.g., Vasquez v. L.A. County*, 487 F.3d 1246, 1253 (9th Cir. 2007) (holding "that, in the Establishment Clause context, spiritual harm resulting from unwelcome direct contact with an allegedly offensive religious (or anti-religious) symbol is a legally cognizable injury and suffices to confer Article III standing"); *Suhre v. Haywood County*, 131 F.3d 1083, 1090 (4th Cir. 1997) ("The cognizable injury caused by personal contact with a public religious display may thus satisfy the injury-in-fact requirement for standing to bring an Establishment Clause case."); *Books v. Elkhart Co.*, 401

F.3d 857, 861 (7th Cir. 2005) ("[I]n Establishment Clause cases a plaintiff can allege injury in fact from a government display of a religious object by alleging that he has undertaken a 'special burden' or has altered his behavior to avoid the object that gives him offense."); *Saladin v. City of Milledgeville*, 812 F.2d 687, 689 (11th Cir. 1987) (involving a claim "contending that the use of the word 'Christianity' on the city seal violated the Establishment Clause").

## II.     Plaintiffs Have Failed Plausibly To Plead An Equal Protection Claim.

To establish an Equal Protection claim based on rational basis review—which Plaintiffs acknowledge to be the applicable standard here—it is insufficient for Plaintiffs merely to allege non-compliance with the law. Instead, they must plausibly allege that they have been "arbitrarily and intentionally treated differently from others who are similarly situated—and the government has no rational basis for the disparity." *Kelly v. District of Columbia*, 893 F. Supp. 2d 115, 122 (D.D.C. 2012). That requires both that Plaintiffs identify a similarly situated comparator and "plausibly allege facts showing that no reasonably conceivable state of facts could provide a rational basis for the challenged" action. *Sanchez v. Office of the State Superintendent of Educ.*, 45 F. 4th 388, 395 (D.C. Cir. 2022); *3883 Conn. LLC v. Dist. of Columbia*, 336 F.3d 1068, 1075 (D.C. Cir. 2003).

Plaintiffs have plausibly pled neither. In terms of a comparator, Plaintiffs allege only that the Architect has previously installed a memorial to two officers who died in the line of duty over two decades ago. Compl. (ECF No. 4-1) ¶¶ 27, 33-35; *id.* at 9 n.16 (citing https://www.aoc.gov/explore-capitol-campus/art/chestnut-gibson-plaque) (depicting a plaque honoring two Capitol Police officers who died in the line of duty in 1998). Plaintiffs are not similarly situated to those two officers, however, because the plaque called for by the Act would need to include over 3,600 names, as established in Defendants' motion. McIntyre Decl. (ECF No. 27-2) ¶ 2. And even were the Court to address this issue solely under a Rule 12(b)(6) standard

and disregard the declaration accompanying Defendants' motion, as Plaintiffs' urge (Opp'n at 9), the Act on its face still required a minimum of approximately 150 names to be included on the plaque, far greater than the example Plaintiffs identify as the basis for alleged disparate treatment. Defs.' Mot. (ECF No. 27) at 3 n.1; Public Law 117-103 § 214(c)(2) (providing that the list "shall include" the names of approximately 150 individuals specifically identified in paragraph (2) of section 215(c) of H.R. 4346, One Hundred Seventeenth Congress, as passed by the House of Representatives on July 28, 2021). Thus, from the standpoint of the pleadings alone, and even without resorting to extrinsic evidence, Plaintiffs have failed to identify any relevant comparator to plausibly plead an Equal Protection claim.

For similar reasons, Plaintiffs have failed to "plausibly allege facts showing that no reasonably conceivable state of facts could provide a rational basis for the challenged" action. *Sanchez,* 45 F.4th at 396. Plaintiffs contend that it is sufficient for them to have alleged "that Defendants have broken the law, and have done so because of a political effort to rewrite the history of the attack on the Capitol." Opp'n (ECF No. 29) at 11. But those allegations do not negate other possible explanations for the delay here, such as the need for the plaque to include over 3,600 names and be in a dimension that would allow for its placement in the location specified in the Act. Because there is a "conceivable state of facts that could provide a rational basis" for the alleged disparate treatment, namely, the difference in creating and installing a plaque of such dimensions as compared to a plaque honoring two individuals, Plaintiffs have failed to plausibly plead an Equal Protection claim.[2]

---

[2] Defendants do not understand Plaintiffs to be contending that their Equal Protection claim should be interpreted as being based on any alleged failure to display the plaque that actually has been created, which, as described in the McIntyre Declaration (ECF No. 27-2 ¶ 3), contains the names of approximately twenty-one law enforcement entities rather than the names of individuals (as discussed in Defendants' motion, a physical plaque containing a list of names as called for by

### III.     **Mandamus Relief Is Not Available**

Plaintiffs offer no meaningful response to Defendants' argument that the claim for mandamus under 28 U.S.C. § 1361 should be dismissed because mandamus is not available against the legislative branch, of which the Architect of the Capitol is part. *See, e.g., Leopold v. Manger*, 102 F. 4th 491, 494 (D.C. Cir. 2024) (assuming without deciding that decisions from other courts of appeals limiting section 1361 to the Executive branch officials "are correct"). Plaintiffs note that courts have "heard lawsuits . . . primarily on employment matters . . . against the Architect," Opp'n at 13, but that is of no moment because Congress has enacted a statute, the Congressional Accountability Act ("CAA"), that makes "the legislative branch of the Federal Government" subject to certain employment discrimination laws as addressed more fully in the CAA. *See* 2 U.S.C. § 1302(a). That the Office of the Architect of the Capitol is covered by that statute does not advance Plaintiffs' argument, but demonstrates instead that it is a recognized part of the "legislative branch." *Id*. § 1301(a)(3)(F).

And, whether Tucker Act jurisdiction applies to the Architect, Opp'n at 12, is equally irrelevant. Plaintiffs rely on *Bell BCI Co. v. United States*, 56 Fed. Cl. 465 (2003), but that case held only that the government there had "'not shown that the Architect of the Capitol is a Legislative Branch agency'"; it did not explicitly hold that it was not. *Colonial Press Int'l, Inc. v. United States*, 113 Fed. Cl. 497, 518 (2013). *Bell BCI*, moreover, has been criticized for failing to place the burden to establish jurisdiction on the plaintiff, *U.S. Sec. Assocs. v. United States,* 124 Fed. Cl. 433, 438 n.4 (2015), and for being "in some tension with" earlier Federal Circuit authority. *Microgenics Corp. v. United States*, 152 Fed. Cl. 679, 686 n. 5 (2021).

---

the Act has not been made).    For that reason, and other reasons addressed above, there would be neither standing nor any basis for such a claim in any event.

More relevant here is the Architect's inclusion within the coverage of the CAA, 2 U.S.C. § 1301(a)(3)(F), and the authority within this Circuit recognizing the Architect to be part of the legislative branch. *Maynard v. Architect of the Capitol*, 544 F. Supp. 3d 64, 79 (D.D.C. 2021). Plaintiffs themselves characterize the Office of the Architect as being "within the United States Congress." Opp'n (ECF No. 29) at 2. Thus, because the Architect is indisputably part of the legislative branch, Plaintiffs' claim under section 1361 should be dismissed.

## CONCLUSION

For the foregoing reasons, and those set forth in Defendants' motion, this action should be dismissed or, alternatively, summary judgment granted in favor of the Architect.

Respectfully submitted,

JEANINE FERRIS PIRRO
United States Attorney

PETER C. PFAFFENROTH, D.C. BAR #496637
Chief, Civil Division

By: */s/ Jeremy S. Simon*
JEREMY S. SIMON, D.C. Bar #447956
Assistant United States Attorney
601 D Street, N.W.
Washington, D.C. 20530
(202) 252-2528
Jeremy.Simon@usdoj.gov

*Attorneys for the United States of America*