**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

|  |  |
|---|---|
| HARRY DUNN, *et al.*,<br><br>　　　　　*Plaintiffs*,<br><br>　　v.<br><br>THOMAS AUSTIN, *et al.*,<br><br>　　　　　*Defendants*. | No. 25-cv-1844 (DLF) |

**MEMORANDUM OPINION**

Harry Dunn, a former officer of the U.S. Capitol Police, and Daniel Hodges, an officer of the Metropolitan Police Department, filed this suit to compel the Architect of the Capitol to install a plaque listing the names of officers who responded to the events at the U.S. Capitol on January 6, 2021.  Before the Court are motions to intervene by Brian Mock and Cindy Lou Young, both of whom were convicted for their actions on January 6 and later pardoned.  Dkts. 12, 13.  For the reasons that follow, the Court will deny both motions.

**I.　　BACKGROUND**

Congress included in the Consolidated Appropriations Act of 2022 an expression of gratitude to "officers of the United States Capitol Police and the Metropolitan Police Department of the District of Columbia, as well as officers from other Federal, State, and local law enforcement agencies and protective entities, who valiantly protected the United States Capitol, Members of Congress, and staff on January 6, 2021."  Pub. L. No. 117-103, § 214(a), 136 Stat. 49, 527.  To that end, Congress mandated that, no "later than 1 year after the date of the enactment of th[e] Act, the Architect of the Capitol shall obtain an honorific plaque listing the names of all" such officers

and "place the plaque at a permanent location on the western front of the United States Capitol." *Id.* § 214(b). The Act goes on to direct the chairs and ranking members of several committees to "jointly compile and confirm a list of the officers . . . whose names should be included on the plaque," *id.* § 214(c)(1), to include officers identified in an earlier House Resolution, *id.* § 214(c)(2).

The plaintiffs in this case responded to the events at the Capitol on January 6. Dunn is a former officer of the U.S. Capitol Police. Compl. ¶ 4, Dkt. 1. He alleges that, while serving on January 6, he "saw rioters attack police" and "protected injured officers" while enduring racial epithets. *Id.* ¶ 17. Hodges is a current officer of the Metropolitan Police Department. *Id.* ¶ 4. He alleges that he was assaulted several times while defending the Capitol. *Id.* ¶ 18. The plaintiffs allege that the Architect has not installed the plaque required by the Consolidated Appropriations Act of 2022, *id.* ¶¶ 27, 35, 38, and they seek to compel installation of the plaque at once, *id.* ¶ 42. The defendants have moved to dismiss their claims. Dkt. 27. That motion remains pending before the Court.

The putative intervenors, Mock and Young, both of whom are proceeding *pro se*, were convicted for their actions at the Capitol on January 6. Mock was convicted after a bench trial on four counts of assaulting, resisting, or impeding officers; one count of civil disorder; one count of theft of government property; one count of entering and remaining in a restricted building or grounds with a deadly or dangerous weapon; one count of disorderly and disruptive conduct in a restricted building or grounds with a deadly or dangerous weapon; one count of engaging in physical violence in a restricted building or grounds with a deadly or dangerous weapon; and one count of committing an act of physical violence in the Capitol grounds or buildings. Am. J. at 1–2, *United States v. Mock*, No. 21-cr-444 (D.D.C. Jan. 3, 2025), Dkt. 127. He was sentenced to 33

months' imprisonment.  J. at 3, *Mock*, No. 21-cr-444 (D.D.C. Feb. 27, 2024), Dkt. 116; Am. J. 3 (imposing time served).  Young was convicted by a jury on one count of entering and remaining in a restricted building; one count of disorderly and disruptive conduct in a restricted building; one count of violent entry and disorderly conduct in a Capitol building; and one count of parading, demonstrating, or picketing in a Capitol building.  J. at 1–2, *United States v. Young*, No. 23-cr-241 (D.D.C. Dec. 11, 2024), Dkt. 113.  She was sentenced to four months' imprisonment.  *Id.* at 3. Both Mock and Young received pardons for these convictions in January 2025.

Mock moves to intervene in the plaintiffs' case because he "[o]ppose[s] the current petition for a one-sided memorial that exclusively honors law enforcement personnel involved in the events of January 6, 2021, while omitting the actions taken against unarmed civilians and peaceful demonstrators." Mock Mot. 2, Dkt. 12.  Accordingly, Mock "[p]ropose[s] a revised memorial that includes," among other things, a "dedicated section honoring the politically persecuted: those January 6 defendants who were" "[i]llegally detained pretrial," "[d]enied constitutional rights," and "[s]ubjected to inhumane treatment and solitary confinement for political purposes." *Id.* at 2– 3.

Young similarly moves to intervene to "protect her significant interest in ensuring that any memorialization of the events of January 6, 2021, at the United States Capitol is equitable, inclusive, and accurately reflects the experiences of all individuals impacted by that day." Young Mot. 1, Dkt. 13.  She argues that the defendants' "failure to install a balanced memorial that includes recognition of January 6 defendants and those who lost their lives violates the Equal Protection Clause" because it "honor[s] one group (law enforcement officers) while excluding others who were equally impacted by the events of January 6, 2021." *Id.* at 2–3.  Young seeks relief in the form of an order that "any memorial installed pursuant to [the Consolidated

3

Appropriations Act of 2022] include recognition of all individuals impacted by January 6, 2021, including the 1,585 January 6 defendants," among others. *Id.* at 8–9.

## II.    LEGAL STANDARDS

Rule 24 of the Federal Rules of Civil Procedure "outlines two different avenues by which a court can allow an outsider to intervene—intervention of right, and permissive intervention." *EEOC v. Nat'l Child.'s Ctr., Inc.*, 146 F.3d 1042, 1044 (D.C. Cir. 1998).  Rule 24(a) provides for intervention of right when a movant can demonstrate four requirements: "1) timeliness of the application to intervene; 2) a legally protected interest; 3) that the action, as a practical matter, impairs or impedes that interest; and 4) that no party to the action can adequately represent the potential intervenor's interest." *Crossroads Grassroots Pol'y Strategies v. FEC*, 788 F.3d 312, 320 (D.C. Cir. 2015).  Rule 24(b) provides for permissive intervention by a third party who either "is given a conditional right to intervene by a federal statute" or "has a claim or defense that shares with the main action a common question of law."  Fed. R. Civ. P. 24(b)(1).  The Court must also "consider whether the intervention will unduly delay or prejudice the adjudication of the original parties' rights."  Fed. R. Civ. P. 24(b)(3).  The Court retains "considerable latitude to grant or deny intervention based on the particular circumstances of the case" under Rule 24(b).  *Ctr. for Biological Diversity v. EPA*, 274 F.R.D. 305, 313 (D.D.C. 2011) (citation modified).

Article III of the Constitution limits the "judicial Power" of federal courts to "Cases" and "Controversies."  U.S. Const. art. III, § 2, cl. 1.  "[T]here is no justiciable case or controversy unless the plaintiff has standing." *West v. Lynch*, 845 F.3d 1228, 1230 (D.C. Cir. 2017).  "To establish standing, a party must demonstrate: (1) an injury in fact that is concrete and particularized as well as actual or imminent; (2) a causal connection between the injury and the challenged conduct; and (3) a likelihood, as opposed to mere speculation, that the injury will be redressed by

a favorable decision." *Nat. Res. Def. Council v. Wheeler*, 955 F.3d 68, 76 (D.C. Cir. 2020) (citation modified). "The burden of establishing these elements falls on the party invoking federal jurisdiction, and at the pleading stage, a plaintiff must allege facts demonstrating each element." *Friends of Animals v. Jewell*, 828 F.3d 989, 992 (D.C. Cir. 2016).

"Intervenors seeking relief broader than or different from that sought by existing parties must possess constitutional standing." *Institutional S'holder Servs., Inc. v. SEC*, 142 F.4th 757, 764 n.3 (D.C. Cir. 2025) (citing *Town of Chester v. Laroe Ests., Inc.*, 581 U.S. 433, 440 (2017)). "[B]ut intervenors that seek the same relief sought by at least one existing party need not do so." *Id.* (citing *Little Sisters of the Poor Saints Peter & Paul Home v. Pennsylvania*, 591 U.S. 657, 674 n.6 (2020)). Although documents filed *pro se* are to be liberally construed, *Redmond v Fulwood*, 859 F.3d 11, 13–14 (D.C. Cir. 2017), *pro se* litigants are still required to prove constitutional standing. Because a putative intervenor's Article III standing "presents a question going to this [C]ourt's jurisdiction," the [C]ourt must address it before evaluating intervention under Rule 24. *Fund for Animals, Inc. v. Norton*, 322 F.3d 728, 732 (D.C. Cir. 2003); *see Conf. Grp., LLC v. FCC*, 720 F.3d 957, 962 (D.C. Cir. 2013).

## III.    ANALYSIS

The Court will deny Mock's and Young's motions to intervene because they lack standing. And to the extent that the putative intervenors do not need to prove Article III standing for permissive intervention, *see In re Endangered Species Act Section 4 Deadline Litig.*, 704 F.3d 972, 980 (D.C. Cir. 2013), the Court will not exercise its discretion to grant their motions to intervene under Rule 24(b).

### A.     Standing

Neither Mock nor Young has standing to intervene.  Both must allege facts to support constitutional standing because each seeks relief that is "broader than or different from that sought by" the plaintiffs.  *Institutional S'holder Servs.*, 142 F.4th at 764 n.3.  In particular, both putative intervenors seek to compel the Architect either to install a plaque that materially differs from that authorized by Congress or to prevent the installation of the January 6 plaque altogether.  Yet neither has identified "an injury in fact that is concrete and particularized," let alone "a causal connection between" such an injury and the defendants' action or inaction.  *Nat. Res. Def. Council*, 955 F.3d at 76 (citation modified).

Mock alleges that the "installation of any permanent public monument reflecting only the plaintiffs' narrative would significantly impair his constitutional rights, damage his reputation, and mischaracterize the broader context and contested facts of January 6."  Mock Mot. 1.  He further argues that a plaque honoring only the January 6 officers would "affect[] his legal history, public identity, and liberty."  *Id.* at 2.

As to the alleged violation of Mock's unspecified "constitutional rights," *id.* at 1, the Court need "not assume the truth of legal conclusions" nor must it "accept inferences that are unsupported by the facts set out in the [motion]," *Arpaio v. Obama*, 797 F.3d 11, 19 (D.C. Cir. 2015) (citation modified).  Mock has not explained how the installation of a plaque honoring the January 6 officers would violate his constitutional rights,[1] and the Court cannot infer such harm from his motion or the attached "Proposed Answer and Opposition," Dkt. 12-1, neither of which identifies a concrete and particularized constitutional injury.

---

[1] Mock's passing reference to "fairness, neutrality, and equal protection under the Constitution," Mock Mot. 2, does not suffice to allege a constitutional injury for the reasons explained below.

Mock's allegations about "damage [to] his reputation" and his "public identity," Mock Mot. 1–2, also fail. Stigmatic injuries can be "sufficient in some circumstances to support standing." *Allen v. Wright*, 468 U.S. 737, 755 (1984). But any stigmatic injury must have been "suffered as a direct result of having personally been denied equal treatment." *Id.* Here, Mock offers no allegations as to how the plaque honoring January 6 officers directly harms his reputation or otherwise stigmatizes him, even if the Court were to accept his argument that the congressionally mandated plaque "presents a false and one-sided narrative of the events of" January 6. Mock Mot. 1. He says that the "government's promotion of a false narrative surrounding January 6" has resulted in him being "harassed in public" and "denied basic services such as banking and employment." Mock Reply 3, Dkt. 22. And after describing his experience overhearing a Capitol tour guide "repeating demonstrably false claims about January 6 to visitors," Mock suggests that, "[f]or the government to now enshrine that narrative in bronze would be to deepen the wound, reaffirm the injustice, and all but guarantee that these personal and professional attacks will continue indefinitely." *Id.* at 3–4. But he has offered no factual allegations to show that installation of the plaque honoring January 6 officers would actually or imminently worsen the pre-existing false "narrative" from which his injuries allegedly flow.

If such an "abstract stigmatic injury" from recognition of another group in a governmental monument "were cognizable," "standing would extend nationwide to all members of the particular . . . groups against which the Government was alleged to be discriminating by its grant of a" monument to another group. *Allen*, 468 U.S. at 755–56. As the Supreme Court explained in *Allen v. Wright*, denying standing to plaintiffs who challenged the government's grant of a tax exemption to a allegedly discriminatory school, a general "denigration, suffered by all members of a racial group when the Government discriminates on the basis of race" cannot be a cognizable

7

injury else "[a] black person in Hawaii could challenge the grant of a tax exemption to a racially discriminatory school in Maine." *Id.* at 754, 756. "Constitutional limits on the role of the federal courts preclude such a transformation." *Id.* at 756. The same principles apply to Mock's allegations of injury by a plaque that he may never see. Absent allegations that the plaque would cause him actual or imminent harm, such allegations are insufficient. Accordingly, Mock has failed to allege the prerequisite injury to support the constitutional standing that he needs to intervene in this case.

Young's allegations similarly fail to support the constitutional standing necessary for intervention. She alleges that her prosecution and subsequent incarceration for misdemeanor offenses related to January 6 resulted in the loss of her business and inflicted depression and anxiety. Young Mot. 2. She also says that installing the plaque honoring January 6 officers will result in "selective recognition" that "perpetuates an unequal application of the law and exacerbates the harms suffered by [her] and others." *Id.* at 3. But again, it is not clear how the plaque, as described in the Consolidated Appropriations Act of 2022, will "exacerbate[]" the harms Young has allegedly suffered following January 6. *Id.* at 8. She says that a "plaque that solely honors law enforcement officers would violate the Fifth Amendment's Equal Protection Clause by arbitrarily favoring one group over others equally affected, denying [Young] and similarly situated individuals the equal protection of the laws." *Id.* But these general legal assertions do not show concrete and particularized harm to her. And Young does not support her claim that the memorial "would perpetuate the financial and emotional harms she has endured . . . and hinder her ability to seek fair recognition for her experiences," *id.* at 6, with any facts to show that the Architect's hanging of the plaque would actually or imminently cause her a pocketbook injury, emotional distress, or prevent her from asking Congress for plaque honoring January 6 defendants. Her

general claims about the "psychological trauma" caused by the "memorial's selective recognition," Young Reply 2, Dkt. 18, are not sufficient because—much like the plaintiffs denied standing in *Lujan v. Defenders of Wildlife*, 504 U.S. 555 (1992)—she has not said that she would imminently observe the plaque, thereby suffering direct harm from its display, *see id.* at 564 & n.2. And it goes "into pure speculation and fantasy, to say that anyone who" has any connection to January 6 "anywhere in the world, is appreciably harmed by a single [plaque] . . . with which [s]he has no more specific connection." *Id.* at 567.

The declaration attached to Young's motion mentions "social isolation and stigmatization resulting from [her] status as a January 6 defendant," in addition to "verbal attacks and harassment." Young Decl. 2, Dkt. 13-1. But she makes no effort to tie those harms to the Architect's installation of—or failure to install—the plaque as described in the Consolidated Appropriations Act of 2022. Young cites *Campell v. District of Columbia*, 894 F.3d 281 (D.C. Cir 2018), for the proposition that she is entitled to "stigma-plus" standing because her "stigmatic harm is accompanied by tangible losses," thereby "distinguishing [her] case from unrelated bystander grievances." Young Reply 2 (citing *Campell*, 894 F.3d at 284). A "stigma-plus claim," however, requires that the government "take[] certain adverse actions *and* [that] those actions create a stigma or other disability that foreclose[s] the plaintiff's freedom to take advantage of other employment opportunities." *Campbell*, 894 F.3d at 284 (citation modified). Even assuming that the installation of the plaque sought by the plaintiffs constitutes "adverse" government action, Young has still failed to allege any facts to show that the plaque would actually or imminently cause her to miss an opportunity or suffer any other particularized harm. Accordingly, she, like Mock, has not alleged facts to show an injury for constitutional standing purposes.

*    *    *

9

Because neither Mock nor Young alleges sufficient facts to support the constitutional standing that they need as intervenors seeking broader relief than the plaintiffs in this case, the Court will deny their motions to intervene.

### B.        Rule 24

Mock's and Young's lack of standing forecloses their efforts to intervene as of right, so the Court will not proceed with analysis under Rule 24(a).  But "'[i]t remains . . . an open question in this circuit whether Article III standing is required for permissive intervention.'"  *Defs. of Wildlife v. Perciasepe*, 714 F.3d 1317, 1327 (D.C. Cir. 2013) (quoting *In re Endangered Species*, 704 F.3d at 980).  "The uncertainty about whether standing is required for permissive intervention remains today."  *In re Endangered Species*, 704 F.3d at 980; *see Cigar Ass'n of Am. v. FDA*, 323 F.R.D. 54, 66 (D.D.C. 2017) (noting the open question); *Mayor & City Council of Baltimore v. Bureau of Alcohol, Tobacco, Firearms & Explosives*, 738 F. Supp. 3d 1, 12 (D.D.C. 2024) (same).

To the extent that Mock and Young do not need to prove Article III standing for permissive intervention, the Court will not exercise its discretion to grant their motions to intervene under Rule 24(b) because neither has shown a "conditional right to intervene by a federal statute."  Fed. R. Civ. P. 24(b)(1)(A).[2]  Nor has either demonstrated that the "claim" for a different memorial

---

[2] Mock cites his "direct and legally protectable interest" in "preventing the government from memorializing a false narrative that affects his legal history, public identity, and liberty."  Mock Mot. 1–2.  But "[t]o be protected by means of intervention, the interest must be a legal interest as distinguished from interests of a general and indefinite character."  *United States v. Am. Tel. & Tel. Co.*, 642 F.2d 1285, 1292 (D.C. Cir. 1980) (citation modified).  Mock's general claims about protecting history, identity, and liberty have no grounding in any legal right conferred on him by § 214, any other statute, or the Constitution.  Mock cites *Heckler v. Mathews*, 465 U.S. 728 (1984), for the proposition that he enjoys a "fundamental liberty interest in being free from reputation defamation by the very institution that deprived him of his freedom based on false pretenses."  Mock Reply 2.  Yet he has not identified any characteristic of the congressionally mandated plaque that would be defamatory to him.  And Young seems to trace her interests to her "Fifth Amendment equal protection rights."  Young Reply 2.  But, again, she has failed to explain how the installation

from that sought by the plaintiffs and described by Congress "shares with the main action a common question of law or fact." *Id.* 24(b)(1)(B). And even if either had done so, "[i]n exercising its discretion, the [C]ourt must consider whether the intervention will unduly delay or prejudice the adjudication of the original parties' rights." *Id.* 24(b)(3). The putative intervenors' request for a substantially different memorial—one that honors the January 6 defendants alongside the January 6 officers—would unduly delay and prejudice the original plaintiffs' request for installation of a plaque that conforms with § 214 of the Consolidated Appropriations Act of 2022. Accordingly, the Court will deny the putative intervenor's motions for permissive intervention.[3]

## CONCLUSION

For the foregoing reasons, Brian Mock's and Cindy Lou Young's Motions to Intervene, Dkts. 12, 13, are denied. A separate order consistent with this decision accompanies this memorandum opinion.

DABNEY L. FRIEDRICH

March 30, 2026                                    United States District Judge

---

of a plaque honoring January 6 officers harms any of her legally cognizable interests, let alone offer any facts that might show that Congress's decision to honor law enforcement could trigger heightened scrutiny or lacks a rational basis.

[3] Because the Court will deny the motions to intervene, it will strike Young's extraneous filings, Dkts. 28, 31, 32, 33, 34, 36, 38, 40, which she did not have leave to file as a non-party to this suit.