**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| HARRY DUNN, and DANIEL HODGES,<br><br>*Plaintiffs*,<br><br>v.<br><br>ARCHITECT OF THE CAPITOL, *et al.*,<br><br>*Defendant.* | No. 25-cv-1844 (DLF) |

**MEMORANDUM OPINION**

Harry Dunn and Daniel Hodges, officers who defended the U.S. Capitol from rioters on January 6, 2021, bring this action against the Architect of the Capitol, seeking to compel compliance with a law that directs the Architect to install a plaque honoring those who served on January 6. *See generally* Compl., Dkt. 1; Consolidated Appropriations Act 2022, Pub. L. No. 117-103, § 214, 136 Stat. 49, 527 (2022). Before the Court is the Architect's Motion to Dismiss under Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6). *See* Def. Mot. to Dismiss, Dkt. 27. Because the plaintiffs lack Article III standing, the Court will grant the defendant's motion under Rule 12(b)(1) for lack of jurisdiction.[1]

## I. BACKGROUND

On January 6, 2021, rioters attacked the United States Capitol to disrupt the certification of the presidential election. Compl. ¶ 11. Officers from the Metropolitan Police Department and Capitol Police, among others, confronted the mob as it breached barricades and forced its way into the Capitol. *Id.* ¶ 12. The officers defended the building and the people inside it, even as hundreds of officers were assaulted. *Id.* ¶ 20.

[1] Because the Court will grant the defendant's motion under Rule 12(b)(1) for lack of jurisdiction, it does not address the defendant's Rule 12(b)(6) arguments.

The plaintiffs, Harry Dunn and Daniel Hodges, were among the officers who defended the Capitol on January 6. Dunn, a former officer of the U.S. Capitol Police, *id.* ¶ 4, alleges that on that day, he "saw rioters attack police" and "protected injured officers" while enduring racial epithets, *id*. ¶ 17. Hodges, a current officer of the Metropolitan Police Department, *id*. ¶ 4, alleges that he was assaulted several times while defending the Capitol, *id*. ¶ 18.

Congress included in the Consolidated Appropriations Act of 2022, a declaration that "the United States owes its deepest gratitude to those officers . . . who valiantly protected the United States Capitol, Members of Congress, and staff on January 6, 2021." Pub. L. No. 117-103, § 214(a). To give that gratitude a permanent expression, the Act directed the Architect to install, within one year, an "honorific plaque listing the names of all of the officers" who responded to the violence "at a permanent location on the western front of the United States Capitol." *Id*. § 214(b).

That deadline came and went. More than three years later, the Architect installed a plaque recognizing the January 6 first responders. *See* Pls.' Resp. to March 7, 2026 Minute Order at 1. But the plaque does not "list[] the names of all of the officers." Pub. L. No. 117-103, § 214(b). Instead, it lists law-enforcement agencies and organizations alongside a QR-code that visitors may scan to access the officers' names. *See* Pls.' Resp. to March 7, 2026 Minute Order at 3. Nor is the plaque installed "at a permanent location on the western front of the Capitol." Pub. L. No. 117-103, § 214(b). Currently, it is displayed in the non-public Senate wing until the plaque can be placed in its permanent location. *See* Pls.' Resp. to March 7, 2026 Minute Order at 2–3 (citing Megan Mineiro, *Senate Agrees to Display a Jan. 6 Plaque Honoring Officers*, N.Y. Times (Jan. 8, 2026)).

The plaintiff officers sue Austin, the Architect of the Capitol, in his official capacity, alleging a violation of the Equal Protection Clause of the Fifth Amendment. Compl. ¶ 3–4. They

seek mandamus under 28 U.S.C. § 1361, specifically, an order compelling the Architect to install the memorial as mandated. *Id.* ¶¶ 38–43. The Architect has moved to dismiss this action for lack of jurisdiction under Rule 12(b)(1). *See* Def. Mot. to Dismiss.

## II. LEGAL STANDARD

Under Rule 12(b)(1) of the Federal Rules of Civil Procedure, a party may move to dismiss an action or claim when the court lacks subject-matter jurisdiction. Fed. R. Civ. P. 12(b)(1). A motion for dismissal under Rule 12(b)(1) "presents a threshold challenge to the court's jurisdiction." *Haase v. Sessions*, 835 F.2d 902, 906 (D.C. Cir. 1987). Federal district courts are courts of limited jurisdiction, and it is "presumed that a cause lies outside this limited jurisdiction." *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994). Thus, "the plaintiff bears the burden of establishing jurisdiction by a preponderance of the evidence." *Moran v. U.S. Capitol Police Bd.*, 820 F. Supp. 2d 48, 53 (D.D.C. 2011) (citing *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 561 (1992)).

"When ruling on a Rule 12(b)(1) motion, the court must treat the complaint's factual allegations as true and afford the plaintiff the benefit of all inferences that can be derived from the facts alleged." *Han v. Lynch*, 223 F. Supp. 3d 95, 103 (D.D.C. 2016) (internal quotation marks omitted). Those factual allegations, however, receive "closer scrutiny" than they would if the court were considering a Rule 12(b)(6) motion for failure to state a claim. *Id.* Unlike in the Rule 12(b)(6) context, a court may consider documents outside the pleadings to evaluate whether it has jurisdiction, but it still must "accept all of the factual allegations in [the] complaint as true." *See Jerome Stevens Pharm., Inc. v. FDA*, 402 F.3d 1249, 1253–54 (D.C. Cir. 2005) (internal quotation marks omitted). If, at any point, the court determines that it lacks jurisdiction, the court must dismiss the claim or action. Fed. R. Civ. P. 12(b)(1), 12(h)(3).

## III. ANALYSIS

Article III of the Constitution limits the judicial power of federal courts to "cases" and "controversies." U.S. Const. art. III, § 2, cl. 1. There is no "case or controversy unless the plaintiff has standing." *West v. Lynch*, 845 F.3d 1228, 1230 (D.C. Cir. 2017). Standing is jurisdictional; if a plaintiff lacks standing, the Court lacks subject-matter jurisdiction and must dismiss the action. *See* Fed. R. Civ. P. 12(b)(1), 12(h)(3).

The "irreducible constitutional minimum of standing contains three elements": (1) the plaintiff must have suffered an "injury in fact" that is concrete and particularized and actual or imminent; (2) there must be "a causal connection between the injury and the conduct complained of"; and (3) it must be "likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision." *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560–61 (1992). "The burden of establishing these elements falls on the party invoking federal jurisdiction, and at the pleading stage, a plaintiff must allege facts demonstrating each element." *Friends of Animals v. Jewell*, 828 F.3d 989, 992 (D.C. Cir. 2016).

Standing is assessed from the time of the complaint. *Advanced Mgmt. Tech., Inc. v. FAA*, 211 F.3d 633, 636 (D.C. Cir. 2000); *cf. U.S. Parole Comm'n v. Geraghty*, 445 U.S. 388, 397 (1980). Because the officers lacked standing when they commenced this action, this Court lacks subject-matter jurisdiction and must dismiss the case.

**A. Injury in Fact**

For standing purposes, an injury in fact is an "invasion of a legally protected interest" that is both "concrete and particularized" and "actual or imminent." *Defenders of Wildlife*, 504 U.S. at 560 (internal quotation marks omitted). That requirement is not satisfied by an interest in seeing the government comply with the law. *See id.* at 573–74. Nor does "offense, disagreement, or distaste" with government action constitute a concrete injury without more. *Nat'l Park Serv. v. Nat'l Tr. for Historic Pres. in the U.S.*, 609 U.S. ___ (2026) (slip op. at 3).

Although the Architect has now installed the plaque, standing turns on whether the officer plaintiffs had a cognizable injury when they filed the complaint. *Advanced Mgmt. Tech.,* 211 F.3d at 636. The relevant question, then, is whether the officers whom Congress meant to honor suffered a cognizable injury from the Architect's failure to install the plaque. The officer plaintiffs insist that they did, alleging several related injuries. *See* Compl. ¶ 31, 32. But none of the injuries alleged in the complaint satisfies Article III's requirements.

First, the officers allege that by failing to offer the recognition Congress promised, the Architect has exacerbated "psychic injuries" that the officers have experienced since January 6. Compl. ¶ 31. According to the officers, the Architect's failure to install the memorial plaque, as Congress directed, "suggests that the officers are not worthy of being recognized." *Id.* ¶ 29. As a result, the Architect's failure to act has compounded Officer Hodges's anxiety and depression and made it impossible for Officer Dunn to continue working to protect members of Congress. *Id.* ¶ 32.

Second, the officers allege that the Architect's continued failure to recognize their service has emboldened private parties to harass them and disparage their service. *Id.* In particular, the officers have been accused "of being 'crisis actors' and . . . conspiracy agents" and regularly

receive death threats. *Id.* Officer Dunn also has been targeted because of his race. *Id.* As a result, both officers fear for their personal security. *Id.*

The first theory fails to present an injury in fact. Injury in fact requires something "other than the psychological consequence presumably produced by observation of conduct with which one disagrees." *Valley Forge Christian College v. Americans United for Separation of Church and State, Inc.*, 454 U.S. 464, 485 (1982). Distress resulting from what the officers perceive as the government's failure adequately to honor or recognize their service is precisely the kind of psychological consequence arising from disagreement with government conduct that, standing alone, does not constitute a concrete injury under Article III. *See Nat'l Trust*, 609 U.S. at ___ (slip op. at 3).

Nor does the officers' unusually strong interest in the challenged government action transform that interest into a concrete injury. To be sure, the officers have a far more personal connection to the plaque than the public at large. They are not "just any person," *Nat'l Trust*, 609 U.S. ___ (2026) (slip op. at 6) (Roberts, C.J., dissenting); they are among the very officers Congress sought to honor. That gives them an understandable and deeply personal interest in whether the government recognizes their service in the manner Congress prescribed. But Article III standing "is not measured by the intensity of the litigant's interest." *Valley Forge*, 454 U.S. at 486; *accord Defenders of Wildlife*, 504 U.S. at 563. It requires an injury in fact. Here, the asserted injury is the psychological harm the officers attribute to what they view as inadequate governmental recognition of their service. Their especially compelling personal stake in receiving that recognition does not render the harm arising from their objection to government inaction concrete for purposes of Article III.

The officers' generalized interest in having the Architect comply with Congress's mandate likewise does not constitute an Article III injury. An asserted right to have the government act in accordance with the law, without more, is not judicially cognizable. *See Defenders of Wildlife*, 504 U.S. at 575–76. Vindicating "the public interest (including the public interest in Government observance of the Constitution and laws) is the function of Congress and the Chief Executive," not the federal courts. *Defenders of Wildlife*, 504 U.S. at 576. And as the Supreme Court has repeatedly held, and recently reinforced, "offense, disagreement, or distaste does not qualify as a concrete and particularized injury under Article III." *Nat'l Trust*, 609 U.S. ___ (2026) (slip op. at 3). Those limitations prevent the federal courts from becoming "continuing monitors of the wisdom and soundness" of government action or forums for resolving disagreements over public policy. *Allen v. Wright*, 468 U.S. 737, 760 (1984) (internal quotation marks omitted). The plaintiff officers' disagreement with the Architect's failure to carry out Congress's mandate thus does not supply the concrete and particularized injury that Article III requires.

The officers' second theory of standing rests on actions by third parties. They allege that they have been called "crisis actors" and "left-wing conspiracy agents," subjected to racial epithets, and received death threats. Compl. ¶ 32. And they fear for their physical safety as a result. *Id.* Those allegations may describe concrete harms sufficient to satisfy the injury-in-fact requirement. *See TransUnion LLC*, 594 U.S. at 425 (explaining that concrete injuries can include certain intangible harms).

But a concrete injury, standing alone, is not enough to establish Article III standing. Those alleged injuries stem from the actions of third parties, which, in turn, caused the plaintiff officers harm. Compl. ¶ 32. The officers still must, and cannot, show that those injuries are fairly traceable to the Architect's failure to install the plaque or likely to be redressed by his doing so.

Whether and how the officers who defended the Capitol on January 6, 2021 should be honored is a matter on which Congress has spoken, and on which it remains free to act. But Congress's decision to require a particular form of recognition does not itself create the concrete injury necessary for Article III standing. At least as alleged in the complaint, the plaintiff officers have not carried their burden of establishing that they have suffered an injury in fact.[2]

**B. Causation and Redressability**

Even assuming that the alleged mental-health issues and third-party harassment are cognizable injuries, the officers have not traced those harms to the Architect's failure to install the plaque as mandated. Article III requires the injury to be "fairly traceable" to the challenged conduct and "likely to be redressed by a favorable decision" of the court. *Valley Forge*, 454 U.S. at 471–72. Causation and redressability thus assure "that proper parties have brought their dispute to the proper branch of federal government." *Fla. Audubon Soc. v. Bentsen*, 94 F.3d 658, 663 (D.C. Cir. 1996). Causation may be said to focus on whether a particular party is appropriate; redressability, on whether the forum is. *Id.* at 664.

---

[2] The officers appear to disclaim any distinct aesthetic injury, but they do rely by analogy on cases recognizing aesthetic injuries arising from contact with public displays. *See* Pls.' Opp'n at 6 (arguing that their harms are "far more than aesthetic or generally offensive"). Even if the Court were to construe the complaint as alleging an aesthetic injury, that theory would also fail. The officers do not allege that the plaque's location or design impairs their ability to "view[], appreciat[e], and study[]" the Capitol, *Defenders of Wildlife*, 504 U.S. at 562–63, or otherwise diminishes their use and enjoyment of it, *Friends of the Earth, Inc. v. Laidlaw Environmental Services (TOC), Inc.*, 528 U. S. 167, 180–183 (2000).

The officers also rely on some cases recognizing reputational injuries. *See* Def. Mot. to Dismiss at 8 (citing *TransUnion*, 594 U.S. 413 (2021)). But the complaint does not allege that the Architect made any false or defamatory statement about the officers or that the challenged conduct itself altered their reputation in a concrete way. *See Transunion*, 594 U.S. at 425, 435. Rather, it alleges psychological harm stemming from mistreatment by unidentified third parties in connection with the officers' service and advocacy. *See* Compl. ¶ 32. Even assuming those allegations could be characterized as reputational injury, the officers still must establish that the injury is fairly traceable to the Architect and redressable by an order of this Court. *See Valley Forge*, 454 U.S. at 471–72. And, as the Court will explain, the plaintiff officers cannot make that showing. *See Defenders of Wildlife*, 504 U.S. at 562.

Start with the officers' psychological injuries. Their theory is that the Architect's failure to provide the recognition Congress prescribed materially exacerbated the anxiety, depression, and other psychological harms they suffered after January 6. Compl. ¶¶ 31–32. That theory is not implausible merely because the attack and its aftermath are the more immediate causes of those injuries. Article III "does not require that the defendant be the most immediate cause, or even a proximate cause," only that the injury be fairly traceable to the defendant's conduct. *Attias v. Carefirst, Inc.*, 865 F.3d 620, 629 (D.C. Cir. 2017). The problem here is that the officers have not alleged facts showing that the challenged conduct caused or materially exacerbated their mental-health conditions.

In the officers' view, the government has attempted to "rewrite the history of January 6, 2021." *See* Mem. in Opp. to Def.'s Mot. to Dismiss at 4. And "because people take their cues . . . from national political leaders," *id.* at 5, the plaintiff officers contend that honoring their service by installing the plaque as required by law is integral to alleviating the stress they experience from the public's perception of that service. But that argument reveals the gap in the officers' causal theory. They do not argue that the Architect's failure to install the plaque itself worsened their mental health conditions. *See* Compl. ¶ 32. Rather, their theory depends on what the Architect's failure to install the plaque communicates to the public, how the public understands that message, and how the resulting level of public recognition affects the officers. *See* Pl.'s Resp. to Court Order at 2.

That theory requires several inferential steps between the challenged conduct and the alleged injury, including the actions of independent third parties. *See Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 414 n.5 (2013); *Murthy v. Missouri*, 603 U.S. 43, 70 (2024). Although the complaint links the failure to install the plaque to public perceptions of January 6 and of the

plaintiff officers, it does not allege that the Architect's failure to install the plaque *worsened* those perceptions. At most, the complaint suggests that the uninstalled plaque failed to improve an already unfavorable public perception. The asserted causal chain is therefore too attenuated to fairly trace the officers' mental-health injuries to the Architect's inaction.

The alleged third-party harassment injury presents an even more attenuated chain. The officers have undoubtedly experienced mistreatment. But they attribute that behavior to the broad governmental "whitewash" of January 6 that they allege, of which the plaque is only one component. Pl.'s Resp. to March 7, 2026 Minute Order at 2. Again, their theory requires the Court to infer that the Architect's failure to install the plaque conveys disrespect for the officers' sacrifice; that members of the public recognize that disrespect; that this disrespect alters the public's perception of January 6 or its responding officers; and finally, that those altered perceptions cause threats and harassment directed at the officers. If that sounds attenuated, it is. Each causal theory attributes the plaintiff officers' injuries not to the plaque itself, but to the reactions of third parties to the plaque and the controversy surrounding it.

Courts are skeptical of causal theories that depend on "unfettered choices made by independent actors not before the courts." *Cierco v. Mnuchin*, 857 F.3d 407, 414–15 (D.C. Cir. 2017) (quoting *Defenders of Wildlife*, 504 U.S. at 562). Courts are also skeptical of causal theories that depend on a "number of speculative links" in chain. *Bentsen*, 94 F.3d at 670. The officers' harassment theory depends on both. Nothing alleged provides a basis to conclude installing the plaque as mandated by law would itself change public opinion or alter the behavior of the unidentified third parties threatening and harassing the officers. The officers' theory of causation is too attenuated to satisfy Article III.

The same problem defeats redressability. Even if the Architect's failure to install the plaque contributed to the officers' injuries, the officers would need to show that mandating its installation would be "likely" to alleviate those injuries. *Defenders of Wildlife*, 504 U.S. at 561. Yet the officers' theory, again, depends on the response of third parties—that requiring the Architect to install the plaque mandated by Congress would alter the public's perception of the officers which would ultimately alleviate the officers' psychological injuries or reduce the harassment they experience. Article III does not allow the Court to rely on such a speculative sequence of events. *See Bentsen*, 94 F.3d at 663–64.

In their prayer for relief the officers request the plaque that Congress required. But the officers must show that the relief they seek is likely to remedy the psychological and third-party harms on which their standing depends. They have not.

**CONCLUSION**

For the above reasons, this Court lacks subject-matter jurisdiction over this action. Accordingly, the defendant's Motion to Dismiss, Dkt. 27, is granted. A separate order consistent with this decision accompanies this memorandum opinion.

Dabney L. Friedrich

DABNEY L. FRIEDRICH
United States District Judge

September 30, 2026